# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

**MEGAN D. BOWLING, as mother and**
**Next friend of JACOB ALLEN WOYAN,**
**an infant,**

      **Plaintiff,**

v.                                                Case No.:  3:13-cv-27347

**APPALACHIAN ELECTRICAL SUPPLY, INC.,**
**A Kentucky Corporation,**
**CORKY WELLS ELECTRIC, INC.,**
**D/B/A C.W. ELECTRIC SERVICES, LLC,**
**a Kentucky limited liability company,**
**AMERICAN STAFFING, INC.,**
**a West Virginia corporation, and**
**BRAD PRINCE,**

      **Defendants.**

## MEMORADUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Compel Production of Statement of Brad Prince. (ECF No. 23). Defendants Appalachian Electrical Supply, Inc. and Brad Prince filed a response in opposition to the motion, (ECF No. 38), and Plaintiff has replied. (ECF No. 39). On April 2, 2014, the undersigned conducted a hearing on the motion, at which the parties were represented by counsel. Having fully considered the arguments of counsel, the Court **GRANTS** Plaintiff's motion to compel. Accordingly, for the reasons that follow, the Court **ORDERS** Defendants to produce a copy of Mr. Prince's statement within **ten (10) days** of the date of this Order.

1

I.  **Relevant Facts**

On a rainy day in September 2006, Brad Prince was operating a vehicle owned by his employer, Appalachian Electrical Supply, Inc., when he was involved in a rear-end collision with a vehicle driven by Marleena Bowling. By all accounts, Ms. Bowling was traveling south on Route 2 in Galipolis Ferry, West Virginia, followed some distance behind by Mr. Prince. Ms. Bowling stopped in the roadway to make a left-hand turn, and while she waited for oncoming traffic to pass, her vehicle was struck by Mr. Prince's vehicle. Accompanying Ms. Bowling were her sister, Megan Bowling, and Megan's 22-month old son, Jacob Allen Woyan, who was in a child safety seat in the rear of the vehicle. Jacob suffered a head injury in the collision and was transported to a local hospital by ambulance. The West Virginia State Police arrived at the scene and conducted an investigation of the accident, which included taking a statement from Mr. Prince.

Five days later, Appalachian's automobile insurance carrier, Travelers Insurance Company ("Travelers"), was notified of the accident. When Travelers learned that the accident involved a rear-end collision, and a toddler had been injured, Travelers assigned the case to its "major claims" division. That same day, an adjuster from the major claims division contacted Marleena Bowling and Brad Prince and obtained recorded statements regarding their recollections surrounding the accident.

Approximately two months later, Travelers received a letter from counsel for Plaintiff, advising that he represented Megan Bowling as Jacob's mother. Over the next six years, Travelers communicated with counsel, collecting medical records and bills related to Jacob's injuries. However, Jacob's claim for damages arising from the automobile accident was not resolved.

On October 7, 2013, Plaintiff filed the complaint herein. In her first set of discovery requests, Plaintiff requested copies of any recorded statements obtained by the Defendants concerning the matters at issue. Defendants provided Plaintiff with a copy of the statement given to Travelers by Marleena Bowling, but refused to produce Mr. Prince's statement to Travelers on the ground that it constituted protected work product. Plaintiff argued that the statement was not work product because it was not prepared in anticipation of litigation; rather, it was obtained as part of Travelers' ordinary investigation of claims. The parties were unable to resolve their disagreement. Therefore, Plaintiff filed the instant motion to compel.

## II. Discussion

Plaintiff moves to compel Mr. Prince's statement, arguing that it is clearly relevant to the issues in dispute in this litigation. Defendants concede that the statement is relevant, but contend that it is not subject to disclosure under Fed. R. Civ. P. 26(b)(3) because the statement constitutes Defendants' work product.

Federal Rule of Civil Procedure 26(b)(3) ordinarily protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Work product is divided into two categories: fact work product and opinion work product. Opinion work product includes the mental impressions, conclusions, opinions, and legal theories of a party's attorney and is scrupulously shielded from disclosure. *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994). Fact work product encompasses such things as statements, interviews, chronologies, and correspondence, and may be subject to production if it is otherwise discoverable under Rule 26(b)(1), and the party seeking

the fact work product shows both a substantial need and an inability to secure the substantial equivalent of the material by alternate means without undue hardship. Fed. R. Civ. P. 26(b)(3)(i)-(ii). In diversity cases, such as this one, "federal common law and the federal rules govern the application of the work product doctrine." *Bradley v. Sunbeam Corp.,* No. 5:99-CV-144, 2003 WL 21982038, *6 (N.D.W.Va. Aug. 4, 2003). The burden is on the party asserting work product protection to demonstrate its applicability. *Ennis v. Anderson Trucking Service, Inc.,* 141 F.R.D. 258, 259 (E.D.N.C. 1991). "In meeting this burden, such party may not rely on conclusory allegations or mere statements in briefs." *Suggs v. Whitaker,* 152 F.R.D. 501, 505 (M.D.N.C. 1993). Rather, the burden is met with a "specific demonstration of facts supporting the requested protection;" preferably, provided "through affidavits from knowledgeable persons." *Id.* A failure to meet the burden will lead to a denial of work product protection.

Obviously, establishing that Mr. Prince's recorded statement is indeed work product is the first step in deciding whether the statement is entitled to protection from discovery. To constitute work product, Mr. Prince's statement must have been prepared "*because* of the prospect of litigation when the preparer face[d] an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992). Simply put, when pending or impending litigation is the compelling reason for creating a document, that document is work product. On the other hand, when a document is prepared in the ordinary course of business, or for reasons other than specifically for litigation, the document is not work product, even though the preparer may ultimately resort to litigation and use the

4

document. *Id.; see, also Adair v. EQT Production Co.,* 294 F.R.D. 1, 4 (W.D.Va. 2013).

"The application of the work product doctrine is particularly difficult in the context of insurance claims," *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 536, 541-42 (N.D.W.Va. 2000), because insurance companies are obligated as part of their everyday business operations to investigate, evaluate, and resolve claims made by or against their insureds. Thus, "[t]he creation of documents during this process is part of the ordinary course of business of insurance companies, and the fact that litigation is pending or may eventually ensue does not [necessarily] cloak such documents with work-product protection." *HSS Enters., LLC v. Amco Ins. Co.,* No. C06-1485-JPD, 2008 WL 163669, *4 (W.D.Wash. Jan. 14, 2008) (citation omitted). At some point, "an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this change occurs." *State Farm Fire & Cas. Co. v. Perrigan,* 102 F.R.D. 235, 238 (W.D.Va. 1984). "Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question" in this context. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 967 F.2d at 984. This analysis must be made on a "case-by-case" basis, considering the following relevant factors: "the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case," the involvement of counsel, and the time at which the document is created. *Kidwiler,* 192 F.R.D. at 542.

Here, the first factor weighs against a finding of work product. The statement at issue is nothing more than a verbatim transcript of Mr. Prince's interview taken by an insurance adjuster collecting basic information regarding the accident. As Defendants concede, insurance adjusters frequently take statements from parties involved in

5

automobile accidents as part of routine claims investigations. Defendants attempt to differentiate Mr. Prince's statement from other routine statements by arguing that when his statement was taken, Travelers knew that the insured had been involved in a rear-end collision and a child had been injured. Consequently, the possibility of litigation was immediately considered, and an adjuster in the major claims department was assigned to the investigation. However, this argument is not persuasive. First of all, very little additional information was known at that time. The official accident report had not yet been filed, and the extent of the child's injuries was unknown. As such, there simply was not enough information available upon which to form a reasonable expectation of litigation. Therefore, it is much more plausible that the statement was taken as part of the initial fact-gathering, rather than *because* of anticipated litigation. Moreover, the "possibility" of litigation for an automobile liability insurance carrier arises every time one of its insureds has an accident involving injuries. In the insurance business, appreciating the possibility of litigation simply is not the same as expecting litigation. Unless the driving force behind the creation of Mr. Prince's recorded statement was the expectation of litigation, the statement is not work product. Defendants offer no evidence by way of affidavit or otherwise to demonstrate that Travelers actually anticipated litigation over Jacob Woyan's injuries when the adjuster took Mr. Prince's statement, or that the adjuster conducted her investigation in a manner that varied from Travelers' ordinary claims development protocol. Certainly, there is nothing in the record to indicate that at this point in time, the driving force behind any investigative document was impending litigation.

The next two factors weigh slightly in favor of a finding of work product. The statement was provided by one of the Defendants in the litigation and is imputed to another Defendant. It was obtained by the Defendants' insurance representative, and likely touched on issues of fault and injury. From that standpoint, Defendants probably intended the statement to be for their own use. Nevertheless, collecting this type of information from individuals with personal knowledge of the facts is both common and necessary for routine claims management regardless of whether the matter ever progresses to litigation.

Regarding the next factor, the circumstances of this case do not favor a finding of work product. First, there was nothing extraordinary about the accident itself. The parties agree that the accident was a rear-end collision that occurred on a rainy day when the pavement was wet. Fortunately, there were no mortalities, and the accident was promptly investigated by the State Police and witnessed by at least two independent witnesses. None of the adults involved in the accident was seriously injured. While a child was hurt, the extent of his injuries was not initially known. No one apparently rushed out and hired an attorney, and the drivers of both vehicles cooperated with the police and the insurance company's adjuster. No one was arrested, charged with a crime, or put in jail. In fact, Travelers was not even notified of the accident until five days after it occurred. Certainly these facts do not raise any red flags, or immediately signify impending litigation. There are no particular facts or nuances, such as those found in *Brown v. Nicholson,* which might suggest that Mr. Prince's statement was obtained *because* of the prospect of litigation. *Id.,* Civ. No. 06-5149, 2007 WL 1237931, *3 (E.D.Pa. Apr. 25, 2007). For example, in *Brown*, the defendant provided two statements, both of which the plaintiff sought to obtain. The

first statement was given to the defendant's insurance carrier three and half months after the accident, and the second statement was provided to an independent investigation agency hired by the defendant's insurance company. The defendant was represented by his personal attorney at both statements. The court concluded that these statements were protected from discovery as work product because they were prepared in anticipation of litigation. The factors most convincing to the court in reaching this conclusion were (1) the severity of the accident—it was a fatal collision; (2) the presence of personal counsel at the statements; and (3) the retention of an outside investigator by the insurance company, which suggested that the parties believed litigation was imminent. *Id.* No similar circumstances are present in this case.

The final two factors also weigh against a finding that Mr. Prince's statement constitutes work product. Neither Travelers, nor Defendants, contacted an attorney or arranged for representation before Mr. Prince's statement was taken. Similarly, Plaintiff had not yet hired an attorney, and no claim, either formal or informal, had been made. Although Plaintiff's young son was in the hospital, the seriousness of the injuries was unknown. As is clear from the exchange in Ms. Bowling's statement, Travelers had little information regarding the extent of Jacob's treatment or knowledge of his prognosis.

Regarding the timing of the statement, the adjuster contacted Mr. Prince within hours after Travelers received notice of the claim. Accordingly, the investigation was in its very early stages when Mr. Prince was interviewed. On the same day that Mr. Prince was questioned by the adjuster, she took the statement of Marleena Bowling. The official West Virginia Uniform Crash Report form prepared by the State Police was not completed until September 11, 2006, five days after the Prince and Bowling statements

8

were taken. Consequently, the statements were among the first substantive pieces of information collected by the adjuster. Therefore, the timing of the statements suggests that they were obtained as part of the insurance company's initial fact-finding, rather than in anticipation of litigation. Moreover, Defendants have failed to offer any specific facts demonstrating that the adjuster took Mr. Prince's statement on September 6 for a purpose other than ordinary claim development. *Suggs v. Whitaker,* 152 F.R.D. 501, 505 (M.D.N.C. 1993) Therefore, Defendants have not made the specific showing required for entitlement to work product protection.

Even if Defendants can establish that Mr. Prince's statement is work product, Plaintiff argues that she is still entitled to discover it because she has a significant need for the statement and is unable to secure a substantial equivalent by alternate means. (ECF No. 39). In response, Defendants argue that the information contained in Mr. Prince's statement is easily obtainable through other means. Not only does Plaintiff have the opportunity to depose Mr. Prince, but Plaintiff has Mr. Prince's statement as recorded in the Uniform Traffic Crash Report. Plaintiff has not shown, or even argued, that Mr. Prince has a faulty memory regarding the accident, nor has there been a claim that Mr. Prince has provided conflicting statements. Finally, Defendants argue that Plaintiff made no effort to obtain Mr. Prince's statement at any point during the past seven years, even though Plaintiff was represented by counsel and was in contact with Defendants' insurance carrier during most of that time. Consequently, Plaintiff should not benefit from the Defendants' efforts.

Plaintiff acknowledges that Mr. Prince is currently available for deposition. She makes no allegation that Mr. Prince has lost all memory of the accident, and she admits that the other witnesses can testify regarding their recollections. Nevertheless,

9

Plaintiff contends that none of these sources can provide a substantial equivalent to Mr. Prince's statement because the statement is contemporaneous evidence of an event that occurred over seven years ago. Plaintiff emphasizes that the statement was made when the accident was fresh in Mr. Prince's mind while his deposition testimony, and that of the witnesses, will be based on their faded recollections. Thus, the deposition testimony can never amount to a substantial equivalent of Mr. Prince's statement.

As the Court underscores in *Suggs,* "contemporaneous witness statements have been touted as a unique catalyst in the search for truth in our judicial process." 152 F.R.D. at 508 *(*citing *National Union Fire Ins.,* 967 F.2d at 985). An account of an event given when fresh in the mind of the speaker is universally held to be more reliable than an account provided after the passage of time. For that reason, courts have widely found good cause to compel the disclosure of a witness statement made at the time of the accident; particularly, if the party seeking the statement did not have an opportunity to question the witness until weeks or months later. *McDougall v. Dunn,* 468 F.2d 468, 474 (4th Cir. 1972); *Coogan v. Cornet Transp. Co., Inc.,* 199 F.R.D. 166, 167 (D.Md. 2001); *See, also,* 6 Moore's Federal Practice § 26.70[5][c] (Matthew Bender 3d ed.) (Contemporaneous statements "are unique in that they provide an immediate impression of the facts. A lapse of time itself may make it impossible to obtain a substantial equivalent of the material"). Statements taken within one week of an accident have generally been considered sufficiently close in time to qualify as "contemporaneous." *Bryant v. Trucking,* Case No. 4:11-cv-2254-RBH, 2012 WL 162409, *4 (D.S.C. Jan. 18, 2012); *Suggs,* 152 F.R.D. 509 ("[S]tatements qualify as being contemporaneous [when] they were made within a week or so of the accident. *Guilford National Bank of Greensboro v. Southern Ry. Co.,* 297 F.2d 921 (6–9 days).

Statements made several weeks or a month after the event may not so qualify. *Basinger v. Glacier Carriers, Inc.,* 107 F.R.D. 771, 774–75 (M.D.Pa.1985), and cases cited therein.")

Although the passage of time, standing alone, may not always be sufficient to establish substantial need under Rule 26(b)(3)(A)(ii), in this case it does suffice. In the more than seven years that have elapsed since the accident, Mr. Prince's memory of the finer details surrounding the collision undoubtedly will have faded. The only other contemporaneous statement regarding the accident that can be attributed to Mr. Prince is a two-line summary contained in the Uniform Crash Report. Certainly, Mr. Prince's recorded interview is longer and more detailed than what appears in the accident report. The importance of Mr. Prince's account of the accident is obvious, and while it is true that Plaintiff made no effort to obtain contemporaneous statements, she really was not in a position to do so at the time. Plaintiff was a passenger in her sister's vehicle when the accident happened, and her son was injured. She naturally devoted her time and attention to her child's care. Plaintiff had no representative involved in the matter early on because her vehicle was not one of the two that collided. She did not retain counsel until two months after the accident, and a statement taken two months later would not have been "contemporaneous."

Therefore, the undersigned finds that Defendants have not met their burden to show that the statement of Mr. Prince was taken in anticipation of litigation and therefore it is not entitled to protection from discovery as work product. In addition, the undersigned finds that even if the statement could be considered work product, Plaintiff has established a substantial need for the statement and has demonstrated her inability to obtain a substantial equivalent by other means. Thus, Defendants are

11

hereby **ORDERED** to produce the statement of Mr. Prince within **ten (10) days** of the date of this Order.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** April 10, 2014

_____
Cheryl A. Eifert
United States Magistrate Judge